UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY CRAWFORD,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:14-cv-4533 (KM)<br><br>OPINION |

## Background

Anthony Crawford applied for Social Security disability benefits on January 28, 2009. (Decision, [1] 1) He alleged that he became disabled one year before that, on January 28, 2008. *Id.* Prior to that date, he worked as a corrections officer in a state prison, and some of his injuries were sustained

---

[1] Citations to the record will be abbreviated as follows:

"Chandarana Evaluation" – Advanced Pain Management and Rehabilitation Evaluation, Dkt. No. 4-10, Exh. 31F, 26-30.
"Function Report" – Function Report – Adult, Dkt. No. 4-6, Exh. 5E, 334-41.
"Hearing Tr." – SSA Office of Disability and Review, Transcript for hearing held November 3, 2010, Dkt. No. 4-2, 36-48.
"Hearing Tr. II" – SSA SSA Office of Disability and Review, Transcript for hearing held November 7, 2012, Dkt. No. 4-2, 49-79.
"Kern Assessment" – Hudson County Medical Determination, Report of Hillary B. Kern, M.D., Dkt. No. 4-9, Exh. 30F, 923-35.
"Khan Records" – Office Treatment Records, Jersey Neurosciences, Dkt. No. 4-10, Exh. 31F, 937-56.
"Majchrzak Letter" – Letter from Tadeusz J. Majchrzak, dated October 24, 2012, Dkt. No. 4-10, Exh. 32F, 967-68.
"Mot." – Plaintiff's Brief Pursuant to Local Rule 9.1, Dkt. No. 7.
"Passive Range of Motion Chart" –Passive Range of Motion Chart, dated May 3, 2011, Dkt. No. 4-10, Exh. 48F, 1111-1115.
"Majchrzak Medical Assmt." – Medical Assessment of Ability to Do Work-Related Activities, dated August 2, 2011, Dkt. No. 4-4, Exh. 12B, 41-43.
"Rubbani Report" – Hudson County Medical Determination, Report of Mariam Rubbani, Dkt. No. 4-10, Exh. 46F.

1

while working in that position. *Id.* at 7. Crawford is presently receiving a disability pension from his previous employer.[2] *Id.* at 4. Crawford alleged numerous impairments, including injuries to the hand, wrist, shoulder, ankle, and lower back, as well as depression and obesity. (Mot., 4, 6; Dkt. No. 4-3, Exh. 4A, 1)

On December 10, 2010, an Administrative Law Judge found that Crawford did not meet the criteria to be considered disabled under the Social Security Act. (Dkt. No. 4-3, Exh. 3A) An Appeals Council vacated and remanded, finding that the ALJ had not considered the effect of several of Crawford's alleged impairments on Crawford's functional capacity. (Dkt. No. 4-3, Exh. 4A, 1-2) On remand, a second ALJ received new evidence and reviewed Crawford's application *de novo.* (*See* Decision) The determination of that second Administrative Law Judge, Patrick Kilgannon, is the decision presently before this Court. Unless otherwise specified, the "ALJ" referred to in this Opinion is Judge Kilgannon.

**The ALJ's Decision**

The ALJ found that Crawford did not meet the criteria to be considered disabled. (Decision, 14) In doing so, the ALJ followed the familiar five-step process outlined at 20 C.F.R. 404.1520. Under that framework, an ALJ first asks whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). At Step 2, an ALJ asks whether the claimant has a medically determinable impairment, or a combination of impairments, that is "severe." 20 C.F.R. § 404.1520(c). At Step 3, the ALJ asks whether the claimant's impairments are so severe as to meet or medically equal the criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d). The ALJ will then assess the claimant's residual

---

[2] Neither party has offered any evidence as to how Crawford's previous employer defines disability, and how that definition might compare to the eligibility requirements for Social Security disability payments. I therefore have not considered the employer's award of a disability pension in rendering my decision.

2

functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). In layman's terms, this means that the ALJ will determine what the claimant can do despite the impairments that have been established. 20 C.F.R. § 404.1545(a)(1). At Step 4, the ALJ determines whether, given that RFC, the claimant can still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, at Step 5 the ALJ determines whether the claimant can perform another kind of work that exists in the national economy. 20 C.F.R. § 404.1520 (a)(4)(v).

In this case, the ALJ determined at Step 1 that Crawford had not engaged in substantial gainful activity since the alleged disability onset date. (Decision, 4) At Step 2, the ALJ determined that Crawford had several severe impairments: "status-post multiple arthroscopic surgeries of the left shoulder and left knee; bilateral carpal tunnel syndrome; cervical-spine disc herniations with spondylosis at C5-6 with cervical radiculopathy; lumber-spine bulging discs with radiculopathy; osteoarthritis of the ankles bilaterally; and obesity." (Decision, 4) The ALJ also found that Crawford had several non-severe impairments: "a right knee disorder; hypertension; asthma; and glaucoma." *Id.* At Step 3, the ALJ determined that these impairments did not, individually or in the aggregate, meet the level of severity required for a finding of disability. *Id.* at 5.

The ALJ then determined that Crawford had the residual functional capacity to perform "a range of sedentary work." (Decision, 6) Specifically, the ALJ found that Crawford could

> lift up to 10 pounds occasionally; can stand and/or walk for approximately 2 hours per 8-hour workday; and can sit for approximately 6 hours per 8-hour workday, with normal breaks. He can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can never balance, kneel or crawl; and can occasionally stoop and crouch. Further, he can frequently handle, finger and feel bilaterally, but in the dominant right upper extremity can frequently reach in all directions , and in the non-dominant left upper extremity can never reach overhead and can occasionally reach in other directions.

3

*Id.*

At Step 4, the ALJ determined that Crawford could not perform any past relevant work. (Decision, 13) At Step 5, though, the ALJ found that there were a significant number of jobs in the national economy that Crawford could perform. *Id.* The ALJ therefore found that Crawford did not meet the criteria to be considered disabled. *Id.* at 14.

Crawford has raised three issues in his appeal to this Court. First, he argues that the ALJ erred in rejecting the opinion of Crawford's treating physicians. (Mot., 30-32) Second, Crawford argues that the ALJ did not properly account for the side effects of Crawford's medication. *Id.* at 35-38. Finally, Crawford argues that the ALJ failed to resolve a conflict between the vocational expert's testimony and the Selected Characteristics of Occupations. *Id.* at 13-16.

With respect to the first two arguments, I find that the ALJ's decision was supported by substantial evidence. With respect to the third argument, however, I agree with Crawford that a remand is appropriate.

## I.  Treating physicians' opinions as to effective ambulation

Crawford argues that the ALJ did not give sufficient weight to the opinions of Crawford's treating physicians. Those physicians, Crawford says, established that the problems with Crawford's left leg (including his ankle and knee) were severe enough to warrant a finding of disability. The argument implicates (a) the proper consideration of a treating physician's opinion; and (b) what it means to ambulate "effectively" within the meaning of the regulations.

### a. The governing standards

#### i.  *Consideration of a treating physician's opinion*

The Commissioner may give more weight to treating sources than to non-treating sources. 20 C.F.R. § 404.1527(c)(2). A treating source's opinion will only be given "controlling weight," however, if that opinion is "well-supported

4

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2) Otherwise, the Administration will determine what weight to give to the opinion based on six factors: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the amount of relevant evidence supporting the opinion; 4) the consistency of the opinion with the record as a whole; 5) the specialization of the treating physician; and 6) Other factors that the claimant or others bring to the Commissioner's attention. *Id.* The ultimate question of whether a person is disabled, however, is reserved to the Commissioner. A treating physician's opinion that a person is disabled within the meaning of the SSA will not be given controlling weight. 20 C.F.R. § 404.1527(d)(1).

Where, as here, physicians disagree as to a claimant's medical condition, an ALJ is entitled to weigh all evidence in making his findings. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (citing *Kertesz v Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986) (explaining that an ALJ "is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences.")) This is true even where the conflict is between a treating physician and a non-treating physician.

> Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal quotations and citations omitted).

The question here, then, is whether substantial evidence supports the ALJ's decision not to credit the opinion of Crawford's treating physicians. If the ALJ had substantial evidence, and expressed permissible reasons for his weighting of the evidence, then his determination will be upheld. *See Brown*, 649 F.3d at 196 ("As the ALJ clearly explained why she gave greater weight to the opinion of Dr. Cohen, her decision was supported by substantial evidence and was not contrary to law.")

### ii. *The ability to ambulate effectively*

In particular, Crawford argues that the ALJ should have credited the treating physicians' assessment of Crawford's limitations in his lower extremities. On this question, the regulations provide that a person will be considered disabled if a musculoskeletal problem causes the person to be unable to ambulate effectively. This means that the person has "an extreme limitation of the ability to walk." 20 C.F.R. Part 404 Subpart P, Appendix 1 § 1.00(B)(2)(b)(1).

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part. 404, Subpart. P, App. 1 § 1.00(B)(2)(b)(2). I will therefore consider whether substantial evidence supported the ALJ's decision that

Crawford, despite the opinions of some of his treating physicians, was capable of ambulating effectively.

### b. Application to this case

I find that the ALJ's decision that Crawford could ambulate effectively resulted from a permissible weighing of the evidence and was supported by substantial evidence.

The ALJ relied on the assessment of examining physician Hillary B. Kern. Dr. Kern evaluated Crawford on May 18, 2012. She noted that even without a cane, Crawford could "ambulate up to 5 blocks." (Kern Assessment, 2) Indeed, she found that Crawford had "no objective need for [a] cane" at all. *Id.* at 6. *See also id.* at 8 (responding "No" to the question, "Does the individual require the use of a cane to ambulate?"). Dr. Kern estimated that in an 8 hour work day, Crawford could sit for three hours at a time, and for a total of five hours; could stand for two hours at a time and for a total of two hours; and could walk for one hour at a time and for a total of one hour. *Id.* at 8.

In support of her assessment, Dr. Kern reported that Crawford had "bilateral ankles, no focal deformity, and full range of motion." (Kern Assessment, 2) She assessed Crawford's motor ability as 4/4 in both lower extremities. *Id.* She stated that an examination of both ankles was "negative" with "no evidence" of impairment in either ankle. *Id.* 3. She observed that Crawford could perform a "full squat without any difficulty" and had full flexibility in both ankles. *Id.* at 6. Dr. Kern also observed that Crawford was able to transfer in and out of a chair and to get on and off of the examining table without difficulty. *Id.* 2.

The ALJ also noted that a state agency doctor, Mariam Rubbani, reported that Crawford transferred to and from the exam table without assistance and without using the step stool. (Rubbani Report, 2) Dr. Chandarana, who evaluated Crawford in September of 2012, noted that although Crawford used

7

a cane, the range of motion in his lower extremities was within normal limits. (Chandarana Evaluation, 1)

Crawford points to the contrary evaluation of Dr. Tadeusz Majchrzak. Dr. Majchrzak treated Crawford for "over fifteen years," serving as his "primary care physician" for "many years." (Majchrzak Letter) Majchrzak opined that Crawford needed to use a cane because of surgery on his left ankle in 2012, and also because of overall "musculoskeletal problems." *Id.* at 2. In May of 2011, Dr. Majchrzak reported that he had prescribed Crawford a cane, and indicated that it would be "difficult" for Crawford to walk or stand without the cane. (Range of Motion Chart, 3) He indicated that even with his cane, Crawford could walk only 3-4 blocks at a time. (Range of Motion Chart, 5) And in August of 2011, Majchrzak indicated that Crawford could stand and/or walk for a total of only 2 hours per day, and for only 30 minutes without interruption. Majchrzak also opined in October of 2012 that Crawford would be unable to work "for at least the next couple of years and most probably indefinite[ly]."[3] (Majchrzak Letter, 2)

The ALJ, however, discounted the opinion of Dr. Majchrzak, and said why. The ALJ found that the medical evidence Dr. Majchrzak cited did not substantiate such an extreme prognosis. (Decision, 12) Although Majchrzak referred to prior surgeries (Majchrzak Letter, 1), he identified no specific condition or imaging showing physiological issues that would cause such a severe impairment. The lack of such support in the medical evidence justified the ALJ in giving little weight to Dr. Majchrzak's opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). And, even

---

[3] This last conclusion is not particularly helpful. Determining disability is the prerogative of the Commissioner. The opinions of others concerning whether the claimant meets the regulatory and statutory definition of disability are not given any particular weight. 20 C.F.R. § 404.1527(d)(1), (3).

8

on their own terms, Dr. Majchrzak's observations (*e.g.*, difficulty in walking without a cane) do not establish an "extreme" limitation to Crawford's ability to walk.

Crawford also points to the reports of certain other doctors. He notes that many of these physicians said he needed an assistive device such as a cane to walk more than household distances. To begin with, the need for a cane does not alone establish a disability. The regulations suggest that the need for two canes or two crutches (as opposed to just one) will ordinarily be required to demonstrate a disability. *See* 20 C.F.R. Part. 404, Subpart. P, App. 1 § 1.00(B)(2)(b)(2) (examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes...") Moreover, there is little evidence that any of these physicians assessed Crawford's ability to ambulate in relation to disability standards. For instance, the regulations state that an inability to ambulate might involve an "inability to walk a block at a reasonable pace on rough or uneven surfaces" or an inability to use public transportation, or the inability to carry out activities like shopping, banking, or climbing a few steps." *Id.* None of the medical testimony cited by Crawford describes his impairment as being quite that severe or provides medical evidence that would support such a characterization.

Even setting aside the ALJ's weighing of the evidence, I find that the evaluations that Crawford relies on do not necessarily provide strong support for his position.

For example, in a series of examinations from June of 2011 to May of 2012, Dr. Musaid Khan, a neurologist, reported that Crawford's walking gait was "narrow based" (meaning the feet stay close together) and "antalgic" (meaning he favored one leg) (Khan Records, 1-14). Dr. Khan reported that Crawford walked with a cane (*id.*), but never opined that a cane was medically necessary. Treatment records also indicate that in examinations in February, March, and April of 2011, Dr. Khan did not indicate that Crawford was using a

9

cane, and assessed his gait as "narrow-based" but not antalgic. *Id.* at 16, 18, 20. And in all of Dr. Khan's examinations, he assessed Crawford's "power" as "5/5 bilaterally in all extremities." *Id.* at 2-20.

Crawford also points to the assessment of Dr. Rubbani, who noted in June of 2011 that Crawford used a cane for ambulation. (Rubbani Report, 3) Rubbani also explained, however, that Crawford "walks at a reasonable pace," and that he could "walk for two blocks with the cane and household distances without." *Id.* He reported that Crawford could walk on his heels and on his toes. *Id.* Rubbani noted that Crawford's ankle ranging was full. *Id.* And he noted that Crawford could squat less than halfway down. *Id.* All of this falls far short of compelling a conclusion contrary to that of the ALJ.

Crawford points out that another examining physician, Dr. Hoffman, noted in September 2012 that Crawford walked "slowly" using a cane. (Hoffman Evaluation, 2) Dr. Hoffman further noted that Crawford had been using the cane for approximately a year (*Id.* at 1) and that the cane was necessary for both standing and walking. *Id.* at 12. Dr. Hoffman also noted, however, that Crawford was "able to put weight on either leg if he holds onto the table," could "bend halfway at the waist" (although he could not bend at the knees, and could "walk on his heels or toes." *Id.* at 2. In these respects, however, Dr. Hoffman stands nearly alone. Dr. Kern, for example, who evaluated Crawford on the same date as Dr. Hoffman, provided a less restrictive prognosis. (Decision, 9)

Filling out a Social Security questionnaire in 2009, Crawford checked a box indicating that he had "no problem" with personal care, including dressing, bathing, and using the toilet. (Function Report, 2) Asked to identify all activities affected by his injuries, he did not check the boxes for standing, walking, or stair climbing. *Id.* at 5. One page that asked Crawford to select any assistive devices he uses, giving options such as crutches, walker, cane, and wheelchair. *Id.* at 7. Crawford selected none of the devices, and wrote "Does not apply." *Id.*

10

I do not suggest that the ALJ's conclusions were the only possible ones. They were, however, permissible conclusions. The ALJ was supported by substantial evidence in determining that Crawford's impairments in his left knee and ankles were not so severe as to warrant a finding of disability.

## II. Side effects of medication

Crawford also argues that the ALJ did not properly consider the side effects of Crawford's medications. Principally, Crawford argues that his medications make him sleepy during the day, which contributes to his inability to work. I find that the ALJ's determination with respect to Crawford's medication and symptoms was supported by substantial evidence.

The regulations do recognize that treatments, including pain medication, can have adverse side effects such as drowsiness. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(I)(1)-(2). The Administration therefore states that it will consider such side effects in evaluating the symptoms that a claimant experiences. 20 C.F.R. § 404.1529(c)(iv).

Crawford says that the various pain medications that he has taken during the period of his disability have made him drowsy. (Mot., 36) He says he sleeps "a lot" during the day. (Hearing Tr., 11-12) He says he can fall asleep "without warning." Crawford also testified that his doctor wished to increase the dosage of a certain pain medication, but refrained from doing so out of concern that the medication would make him too sleepy. (Hearing Tr. II, 19)

The ALJ had a substantial basis for rejecting that evidence. First, he found that this testimony was contradicted by Crawford's statements to Dr. Kahn on July 12, 2012, in which Crawford denied experiencing daytime sleepiness. (Khan Records, 975) (I note, however, that in an October 2012 visit to the same doctor, Crawford did complain of sleepiness.)

More fundamentally, the ALJ was justified in concluding that the complained-of drowsiness did not rise to the level of a disability or contribute significantly to Crawford's symptoms. The Third Circuit has held that

11

drowsiness "should not be viewed as disabling unless the record references serious functional limitations." *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002) Here, even Crawford himself never testified that his drowsiness had caused such "serious functional limitations." Crawford alleged only that he sleeps a lot and drives less often because of his drowsiness. (Hearing Tr., 6) It was not error for the ALJ to find that such symptoms do not render Crawford disabled.

### III. **Vocational Expert**

Finally, Crawford argues that the testimony of the vocational expert was inconsistent with the information contained in the Dictionary of Occupational Titles. I agree and will remand for further proceedings.

At Step 5, the ALJ must show that jobs exist in the national economy in significant numbers that an individual in the claimant's situation can perform. 20 C.F.R. § 404.1560(c)(1) At this stage, the burden is on the Social Security Administration to demonstrate that such jobs exist. 20 C.F.R. § 404.1560(c)(2).

The Social Security Administration has stated that in making this determination, it will rely on information from two sources: a Department of Labor publication called the Dictionary of Occupational Titles (including the DOT's companion publication, the Selected Characteristics of Occupations) and the testimony of "vocational experts" (*see* 20 C.F.R. § 404.1566(e)). These two sources must be consistent with one another; that is, the testimony of the vocational expert must be consistent with the information contained in the Dictionary of Occupational Titles, including the information in the Selected Characteristics of Occupations. *See* SSR 00-4P, 2000 WL 1898704, *2 (December 4, 2000). If the two sources appear to be inconsistent, the ALJ must either resolve the conflict, or else rely on other evidence to conclude that a sufficient number of jobs exist that the claimant could perform. The ALJ must also explain how the conflict was resolved:

> When vocational evidence provided by a VE or VS [vocational specialist] is not consistent with information in the DOT, the

> adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict.

*Id.* Note that the ALJ is responsible for resolving such conflicts regardless of whether the conflict was identified at the time the vocational expert testified or only arose later. *Id.* ("The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.").

I agree with Crawford that the vocational expert's testimony is not consistent with the Selected Characteristics of Occupations, a companion publication of the Dictionary of Occupational Titles.[4] Recall that the ALJ found that Crawford had a severe impairment in his left shoulder. (Decision, 4) Therefore, the ALJ posed a hypothetical to the vocational expert that assumed an individual who had certain left shoulder limitations: that is, one who could not use his left arm for any overhead reaching, and could reach in other directions no more than occasionally. (Hearing Tr. II, 25-26; Decision, 6) The vocational expert identified three job categories from the Dictionary of Occupational Titles that fit these criteria: Addresser (DOT No. 209.587-010), Ticket Counter (219.587-010), and Document Preparer (249.587-018). *Id.* at 26-27) According to the Selected Characteristics of Occupations, however, each of those jobs requires either "constant" or "frequent" reaching. (Mot.,

---

[4] Just as an ALJ must ensure that the vocational expert's testimony is consistent with the Dictionary of Occupational Titles, the ALJ must likewise ensure that it is consistent with the Selected Characteristics of Occupations.

> Before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations.

SSR 00-4P, 2000 WL 1898704 at *1.

Appendices A-C)[5] Thus the vocational expert's testimony appears to conflict with the Dictionary of Occupational Titles.

Courts have considered whether such conflicts require a remand to the ALJ. A remand is not necessary if the conflict was adequately resolved or explained by the vocational expert, or if other portions of the record provide substantial evidence to support the ALJ's conclusion that relevant jobs are available in the national economy. But where such support is lacking, a remand will be required. Three cases are instructive here.

In *Boone v. Barnhart*, 353 F.3d 203 (3d Cir. 2003), the ALJ determined that Boone could perform only a limited range of light, unskilled work. (Light work is work that involves lifting only a certain amount of weight and requires only a certain amount of walking or standing. *See* 20 C.F.R. § 416.967.) *Boone*, 353 F.3d at 206-07. The vocational expert, however, testified that an individual with Boone's capabilities could perform work as an inventory clerk or a home health aide, both of which the Dictionary of Occupational Titles categorized as involving "medium," not light work, and as being "semi-skilled." *Id*. The ALJ also found that Boone could work as a "sales counter clerk." The Special Characteristics of Occupations, however, listed that job as involving frequent reaching, handling, and fingering, which the ALJ had found that Boone could not do. *Id.* at 207. The Third Circuit found that the vocational expert's testimony therefore conflicted with the Dictionary of Occupational Titles. *Id*. at 208. The Court of Appeals considered whether the apparent discrepancy was explained by the vocational expert's testimony, or whether the record in some other way contained substantial evidence that there were a significant number of jobs in the national economy that Boone could perform. *Id*. at 208-09. Finding such explanation and evidence to be lacking, the Court remanded the case for further proceedings. *Id.* at 209-10.

---

[5] For the full text of the SCR, including a key for what its various acronyms represent, *see* www.nosscr.org/sco/sco.pdf, pages 340, 341, 347, and ID-2. Accessed August 12, 2015.

The Third Circuit applied the same standard in *Zirnsak v. Colvin*, 777 F.3d 607 (2014). There, the ALJ had determined that Zirnsak was capable of only sedentary work. *Id.* at 619. The vocational expert testified that Zirnsak could work as a "subassembler," a job that the Dictionary of Occupational Titles categorizes as "light," rather than "sedentary." *Id.* The Third Circuit therefore considered whether the vocational expert had explained the discrepancy, or whether the record otherwise contained substantial evidence that a significant number of jobs existed in the national economy that Zirnsak could perform. *Id.* The Court found that the vocational expert had not adequately explained the discrepancy. The vocational expert had, however, identified other jobs, performable by Zirnsak, that existed in significant numbers in the national economy. The Court of Appeals therefore affirmed the ALJ's decision. *Id.* at 620.

Similarly, in *Burns v. Barnhart*, 312 F.3d 113 (3d Cir. 2002), the Third Circuit considered a case in which the ALJ had determined that Burns could perform only work that was light and unskilled. The vocational expert, however, testified that Burns could perform more demanding "medium" and "semi-skilled" work. *Id.* at 127-28. The Third Circuit, having already directed a remand on other grounds, directed the Administration to clarify this apparent conflict as well.

Here, I must determine whether the apparent conflict between the demands of the jobs that the vocational expert identified and Crawford's exertional limitations either were explained by the vocational expert, or are otherwise supported by substantial evidence. The vocational expert did not address this discrepancy in his testimony. (Hearing Tr., 24-31) Likewise, the ALJ did not identify or explain the discrepancy in his decision. (*See* Decision, 14)("the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.") The vocational expert did not provide, nor did the ALJ cite, other evidence of jobs in the national economy that lay within Crawford's RFC.

15

In short, at Step 5 the ALJ appears to have relied exclusively on the vocational expert's testimony that Crawford could perform three jobs (Addresser, Ticket Counter, and Document Preparer) that require "constant" or "frequent" reaching. I do not suggest that there exist no jobs that Crawford could perform requiring only limited or occasional reaching. Nor do I mean to foreclose the possibility that the ALJ could determine that Crawford could perform a job that required reaching with his right arm. I state only that such jobs, if they exist, are not identified in this record. And such a distinction, if the ALJ intended it, was not stated in the ALJ's decision.

Remand, therefore, is appropriate. This remand is solely for the purpose of reconsideration of Step 5. The ALJ may take such additional evidence as he deems necessary to resolving the conflict at Step 5. I do not direct any reconsideration of Steps 1-4, although the ALJ of course retains discretion to do so if he deems it necessary or advisable.

## Conclusion

The case will be remanded to the Social Security Administration. A separate order will issue.

Dated August 14, 2015
Newark, New Jersey

*/s/ Kevin McNulty*

_____
Kevin McNulty
United States District Judge